NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRIVATE SOLUTIONS INC., | Civil Action No. 15-03241 (AET) (TJB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| SCMC, LLC, | |
| Defendant. | |

**BONGIOVANNI, Magistrate Judge**

### I.  Introduction

Before the Court is the Plaintiff's, Private Solution Inc. ("PSI") Motion for Leave to File an Amended Complaint.   [Docket Entry No. 53].   PSI wants to file an Amended Complaint adding Seneca Holdings, LLC ("Seneca Holdings") as a defendant.   [Docket Entry No. 53]. Defendant SCMC, LLC ("SCMC") opposes the motion [Docket Entry No. 55] and PSI has replied [Docket Entry No. 58].   The Court fully reviewed and considered all arguments made in support of and in opposition to PSI's motion, and considered the motion without oral argument pursuant to L.Civ.R. 78.1(b).   For the reasons set forth below, PSI's motion is GRANTED IN PART and DENIED IN PART.

### II.  Procedural and Factual Background

On or around October 29, 2012, Hurricane Sandy struck the coast of New Jersey, damaging or destroying almost 350,000 homes, and causing approximately $30 billion in economic losses to businesses and residential properties.   [Docket Entry No. 55, at 1–2].   In response, the State of

1

New Jersey's Department of Community Affairs launched the New Jersey Reconstruction, Rehabilitation, Elevation, and Mitigation Program ("RREM Program").   [*Id.*].   The RREM Program provided affected homeowners with three options, "pathways," to repair and/or rebuild their homes.   [*Id.*].   The third pathway, "pathway C," allowed homeowners to have their primary residences repaired or rebuilt using a host of state-approved contractors.   [*Id.*].

SCMC was approved by the State of New Jersey to be a pathway C general contractor under the RREM Program.   [*Id.*].   After approval, SCMC entered into a teaming agreement with other entities to obtain house assignments, and perform repair work as approved by the RREM Program.   [*Id.*].   Upon securing house assignments, SCMC then searched for possible security companies to provide surveillance and protection related to the assigned homes.   [*Id.*].   SCMC's president at the time, Steve Martin, negotiated with and ultimately engaged the services of PSI to provide security and fraud protection services for SCMC's assigned homes.   [*Id.* at 2–3; Docket Entry No. 55].   A contract was drafted by PSI and executed by both parties on or around March 4, 2014.   [Docket Entry No. 1, ¶ 4; Docket Entry no. 1-1; Docket Entry No. 53, at 2].

On October 3, 2014, PSI filed this lawsuit in the District Court for the District of South Carolina and alleged three causes of action against SCMC: (1) breach of contract, (2) breach of contract accompanied by fraud, and (3) promissory estoppel.   [Docket Entry No. 1].   On January 19, 2015, SCMC moved to transfer this matter to the District of New Jersey. The motion was granted by Order of the Honorable G. Ross Anderson on May 8, 2015.   [Docket Entry No. 29.]. By Order of this Court, the parties participated in mediation on September 28, 2015, but were not able to resolve the matter.   [Docket Entry Nos. 41 & 42].

On April 30, 2015, during the Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition of SCMC, PSI learned SCMC is an allegedly underfunded, wholly-owned subsidiary of Seneca

2

Holdings, a holdings company PSI claims dominates SCMC.   [Docket Entry No. 53-1, at 2].
PSI now seeks to amend the complaint to add Seneca Holdings and allege against it the three
aforementioned causes of action, and a separate fourth piercing the corporate veil cause of action.
[*Id.*].

The Scheduling Order entered in this case required any motions to amend the pleadings to
be filed by February 15, 2016.   [Docket Entry No. 49, at 1].   February 15, 2016, however, was
a court holiday:   Washington's Birthday.   As a result, PSI filed the instant motion to amend one
day later on February 16, 2016.   [Docket Entry No. 53].

### III.  Analysis

PSI argues that the Court should grant its motion for four reasons:   First, PSI's motion
was due on a federal holiday and was filed the next business day. Therefore, the motion is timely
and not subject to the higher "good cause" standard of Rule 16(b).   [Docket Entry No. 58, at 1].
Second, as PSI moved to amend within the time set by this Court's Scheduling Order, the mere passage
of time is no basis to deny the motion under Rule 15(a).   [*Id.* at 2].   Third, PSI's motion to join
Seneca Holdings is not futile as the motion sufficiently states a claim under the applicable law.
[*Id.* at 3].   Finally, PSI argues that SCMC's claimed sovereign immunity is premature as it is
unsupported by the present record and therefore should be considered only after Seneca Holdings joins
the litigation.   [*Id.* at 7].

SCMC argues that PSI's motion should be denied for the following reasons:   First, SCMC
argues that PSI's motion was not timely, as it was filed outside of the deadline for amending and
it is therefore subject to the heightened good cause standard.   [Docket Entry No. 55, at 4].
Similarly, as it was untimely filed, PSI lacks the diligence required to meet the good cause standard
to amend.   [*Id.* at 5-46.   Alternatively, even under the lenient Rule 15(a) standard, PSI may not

amend because PSI had all facts pertinent to the proposed new claims for at least one year, but did not act during that time.   [*Id.* at 7-8].   Second, SCMC argues that PSI's motion is futile as PSI has failed to state a claim upon which relief may be granted.   [*Id.* at 8].   Specifically, SCMC asserts that PSI's proposed breach of contract accompanied by fraud, promissory estoppel and veil piercing claims fail as a matter of law.   [*Id.* at 9-11].   Further, SMC argues that because Seneca Holdings is an arm of the Seneca Nation of Indians, it shares the Nation's sovereign immunity, and is therefore protected from suit.   [*Id.* at 12].

### a.  Standard of Review

Under Rule 15(a)(2), the Court may grant a party "leave to amend to add an adverse party after the time for responding to the original pleading has lapsed."   *Nelson v. Adams United States*, 529 U.S. 460, 466 (2000).   When a party seeks to amend within the timeline set by a court's scheduling order, "the standard for adding a party [. . .] lies within the discretion of the court." *Liberty Mutual Ins. Co. v. Hurricane Logistics Co*., 216 F.R.D. 14, 16 n.5 (D.D.C. 2003);   s*ee also, Coulson v. Town of Kearny*, No. 07-5893 (PGS), 2010 U.S. Dist. LEXIS 3711, at *7 (D.N.J. Jan. 19, 2010).   Thus, at the outset, the Court should freely allow amendments under Rule 15(a)(2).   *Foman v. Davis*, 371 U.S. 178, 182 (1962); s*ee also, Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).   The Court, however, may reject a Rule 15(a)(2) motion when the amendment sought: (1) causes undue delay; (2) arises from bad faith or dilatory motive on the part of the movant; (3) arises from repeated failure to cure deficiencies by amendments previously allowed; (4) causes undue prejudice to the opposing party by virtue of allowance of the amendment; or (5) is futile.   *Foman,* 371 U.S. at 182; s*ee also, Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).   In the absence of those factors, a motion for leave to amend should be liberally granted.   *Long*, 393 F.3d at 400.

4

An amendment is futile when "the complaint, as amended, fails to state a claim upon which relief could be granted[,]" *i.e.,* when it fails under Rule 12(b)(6).   *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); s*ee also, Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010); *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).   In order to survive a Rule 12(b)(6) motion, a plaintiff must show that its "claims []cross the line from conceivable to plausible."   *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); s*ee also, Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (stating "only a complaint that states a plausible claim for relief survives a motion to dismiss").   Rule 12(b)(6) requires more than conclusory statements, but does not demand that a plaintiff supply detailed factual allegations.   *Twombly*, 550 U.S. at 555.

When a party seeks to amend outside the timeline set by a court's scheduling order, the Court will analyze the motion to amend under the standard set forth in Rule 16(b)(4).   Under Rule 16(b)(4), the Court will accept a tardy amendment upon a showing of "good cause."   *Id.;   see also, Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 339–40 (3d Cir. 2000); *Kuchinsky v. Pressler & Pressler, LLP*, No. 12-01903, 2014 U.S. Dist. LEXIS 58461, at *6–10 (D.N.J. Apr. 28, 2014).

### b.   Timeliness Analysis

SCMC argues that because PSI filed its motion to amend outside the deadlines established by three separate scheduling orders, the motion is untimely and subject to Rule 16(b)(4)'s heightened good cause standard.   [Docket Entry No. 55, at 4].   Prior to this case's transfer, the District of South Carolina entered two scheduling orders.   [See Case No. 8:14-cv-03874, Docket Entry No. 9 and 16.]   The deadlines for amendments of the pleadings set forth in those orders were December 29, 2014 and January 26, 2015, respectively.   [*Id*.].   Following this case's

5

transfer to the District of New Jersey, this Court entered another Scheduling Order on January 8, 2016. [Docket Entry No. 49]. That order directed the parties to submit any motion to amend the pleadings and/or add new parties by February 15, 2016. [*Id*.]. As noted above, PSI filed the instant motion to amend on February 16, 2016.

As a general rule, if a subsequent scheduling order sets a later deadline for the same obligation set forth in a prior scheduling order, the later deadline replaces the prior deadline. *See*, *Fermin v. Toyota Material Handling, U.S.A., Inc.,* 2012 WL 1393074, at *4 (D.N.J. Apr. 23, 2012) (court found that the prior deadline to "amend the pleadings" was replaced by a later deadline to "amend the pleadings," when the later scheduling order's deadline specifically used the same language as the prior scheduling order). Therefore, the Court will only examine the timeliness of PSI's motion under the February 15, 2016 deadline set forth in this Court's Scheduling Order.

SCMC's argues that PSI's motion was untimely as it was filed on February 16, 2016, one day after the relevant deadline. However, SCMC's argument fails as it ignores the computation of time rules set forth in Rule 6, which states in relevant part:

> When the period is stated in days or a longer unit of time [...] include the last day of the period, but if the last day is a Saturday, Sunday, or *legal holiday*, the period continues to *run until the end of the next day* that is not a Saturday, Sunday, or legal holiday.

FED. R. CIV. P. 6(a)(1)(C) (emphasis added).

Similarly, Rule 6(a)(6)(A) defines a legal holiday as: "the day set aside by statute for observing [...] Washington's Birthday." FED. R. CIV. P. 6(a)(6)(A). February 15, 2016 was Washington's Birthday. Therefore, the deadline for PSI to submit the motion to amend "continue[d] to run until the end of the next day [...]." *Id.* As PSI filed its motion the day immediately following Washington's Birthday, PSI timely filed its motion. *See also Bailey v.*

6

*United Airlines*, 279 F.3d 194, 203 (3d Cir. 2002) (court holding motion timely when filed the day after Columbus Day).

Additionally, this Court is not persuaded that PSI's motion should be rejected under Rule 15(a)(2), owing to PSI's alleged dilatory motive or undue delay. SCMC claims that PSI "had all facts pertinent to its proposed new claim for at least one year, if not longer," and that "[n]o litigation developments in the last nine months to a year have led PSI to seek any new claims." [Docket Entry No. 55, at 7].   SCMC cites *Dimensional Communs., Inc. v. Oz Optics, Ltd.* 148 F. App'x 82, 84–85 (3d Cir. 2005) in support of its proposition that undue delay or dilatory motive may exist when the movant had facts actuating the proposed claim well before the deadline to amend.   However, SCMC's reliance on *Dimensional Communs.* is misplaced because it is factually distinguishable.   The scheduling order in *Dimensional Communs.* set December 13, 2002 as the deadline for filing motions to amend, but the movant did not file its motion until May 16, 2003, nearly five months after the deadline.   *Id.*   As just noted, PSI's motion was filed within the relevant deadline and was therefore timely.   Under these circumstances, despite the fact that PSI could have moved sooner to add Seneca Holdings as a defendant, the Court finds that PSI did not unduly delay in moving to amend.   The Court similarly finds no dilatory motive on the part of PSI.

### c.  Futility Analysis

SCMC likewise argues that PSI should not be allowed to amend because PSI's motion is either entirely or partially futile. SCMC argues that the motion is entirely futile because Seneca Holdings is an arm of the Seneca Nation of Indians and therefore shares the Nation's tribal sovereign immunity, depriving this Court of subject matter jurisdiction. Additionally, SCMC argues the motion is at least partially futile because three of the four claims against Seneca

Holdings (breach of contract accompanied by fraud, promissory estoppel and veil piercing) fail as a matter of law.   In this regard, SCMC argues that PSI's proposed breach of contract accompanied by fraud against Seneca Holdings is not a recognized cause of action under New Jersey law. Similarly, SCMC contends that, under New Jersey law, PSI's proposed promissory estoppel claim against Seneca Holding fails because promissory estoppel is inapplicable when a valid contract exists. Lastly, SCMC claims that PSI's proposed veil piercing claim is factually unsupported and therefore futile.

PSI argues that the merits of its three existing claims (breach of contract, breach of contract accompanied by fraud and promissory estoppel) are not at issue.   Therefore, PSI maintains that the only concern for the Court in the context of the pending motion to amend is whether PSI's proposed veil piercing claim has been sufficiently pled, which, as stated above, PSI argues it has.

The Court agrees with PSI that its three existing claims as asserted against SCMC are not at issue here.   The Court disagrees, however, that the Court need not address the viability of those claims as asserted against Seneca Holdings.   Instead, this Court is responsible for reviewing the viability of the claims PSI seeks to assert against the new proposed defendant, Seneca Holdings and PSI shall only be permitted to allege same if they are non-futile.   Because Seneca Holding's purported tribal sovereign immunity would bar suit against Seneca Holdings entirely, the Court will consider that issue first.

### i. Sovereign Immunity

At this early stage, the Court is not convinced that Seneca Holdings enjoys tribal sovereign immunity prohibiting PSI's proposed claims against it.   When a named entity in a lawsuit has tribal sovereign immunity, the matter must be dismissed for lack of subject matter jurisdiction. *Kiowa Tribe v. Mfg. Techs.*, 523 U.S. 751, 754 (1998).   Indeed, "[a]s a matter of federal law, an

8

Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Tribal sovereign immunity, likewise, extends to both governmental and commercial activities, whether the activities occur on tribal lands or not. *Id*. at 754–55. This immunity also extends to entities that are divisions or "arms" of the tribe. *See, e.g., Danka Funding Co., LLC v. Sky City Casino*, 329 N.J. Super. 357, 361 (Ch. Div. 1999) (stating "principles of [tribal sovereign] immunity are equally applicable to subordinate organizations of the tribe").

Nevertheless, tribal sovereign immunity does not apply to all cases because it is "unique and limited." *United States v. Waters*, No. 13-115, 2013 U.S. Dist. LEXIS 107771, at *20 (E.D. Pa. July 31, 2013) (citing *United States v. Wheeler*, 435 U.S. 313, 323 (1978)). For example, tribal sovereign immunity does not extend to officials acting outside their official capacity or outside their scope of authority. *See Puyallup Tribe, Inc. v. Dep't of Game of Wash.,* 433 U.S. 165, 173 (1977)*; Bynon v. Mansfield*, No. 15-00206, 2015 U.S. Dist. LEXIS 66684, at *3 (E.D. Pa. May 21, 2015). Similarly, tribal sovereign immunity also does not necessarily extend to economic entities, even when those entities are subdivisions of a tribe. *Breakthrough Mgmt. Grp., Inc. v. Chukchansl Econ. Dev. Auth.*, 629 F.3d 1173, 1184 (10th Cir. 2010). A subdivision of a tribe will only share the tribe's immunity if the relationship between the tribe and the entity is sufficiently close. *Breakthrough,* 629 F.3d at 1183. As neither the Third Circuit nor the District of New Jersey have squarely considered this issue, this Court turns to the Tenth Circuit's six factor test set forth in *Breakthrough* to determine whether the relationship between Seneca Holdings and the Seneca Nation of Indians is sufficiently close for Seneca Holdings to enjoy the Nation's sovereign immunity.

In *Breakthrough*, the Tenth Circuit stated that the Court should parse the tribe's relationship to the economic entity by:

"look[ing] to a variety of factors when examining the relationship between the economic entit[y] and the tribe, including but not limited to: (1) [the entity's] method of creation; (2) [its] purpose; (3) [its] structure, ownership, and management, including the amount of control the tribe has over [it]; (4) whether the tribe intended for the entit[y] to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entit[y]; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entit[y]."

*Id.* at 1187.

As *Breakthrough* makes clear, determining whether an economic entity such as Seneca Holdings benefits from tribal sovereign immunity requires a fact-intensive inquiry.   The Court recognizes that Seneca Holdings has produced its Second Amended Charter, which discusses the economic entity's formation, purpose, structure, and relationship to the Seneca Nation.[1]   [Docket Entry No. 55-1].   The Charter makes clear that Seneca Holdings was organized under tribal law and was created for the purpose of facilitating the Tribe's economic interests. The Charter is highly probative of several of the *Breakthrough* factors; however, it is not enough to definitively establish that Seneca Holdings shares tribal sovereign immunity with the Seneca Nation of Indians.   As such, more discovery is required to appropriately consider the issue.   Consequently, at this juncture, Seneca Holdings purported tribal sovereign immunity does not render PSI's proposed amendments futile.

### ii.  PSI's Second Proposed Cause of Action is not Futile

The Court finds that PSI's second proposed cause of action against Seneca Holdings for breach of contract accompanied by fraud is not futile. PSI originally pled this cause of action

---

[1]  Whether the Charter is even appropriate for the Court's review is debatable as the Court only considers the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same.   *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   However, since PSI does not object to the inclusion of same and since the Charter does not convince the Court that Seneca Holdings is entitled to sovereign immunity, the Court takes it into account.

against SCMC when this matter was filed in the District of South Carolina. South Carolina law explicitly allows this claim.   *See, e.g, Atkinson v. Orkin Exterminating Co., Inc.*, 361 S.C. 156 (2004).   While SCMC argues that New Jersey law should apply, specifically referencing the contract signed between PSI and SCMC that contains a choice of law clause stating New Jersey law shall govern all disputes arising under the contract (Docket Entry No. 1-1, at 17), no court has yet rendered a choice of law decision, nor has that question been briefed for the Court.[2]   Under these circumstances, the Court finds that Plaintiff's proposed breach of contract accompanied by fraud claim asserted against Seneca Holdings is not futile.[3]

### iii.  PSI's Third Proposed Cause of Action is Futile

The Court finds PSI's third proposed cause of action for promissory estoppel is futile. Under both New Jersey and South Carolina law, to recover on a theory of promissory estoppel, a plaintiff must allege and prove that:

> (1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) [the promisee] incurred a detriment in said reliance.

---

[2]  While the District of South Carolina in its transfer order suggested that New Jersey law would apply, noting that "a district court in New Jersey would be best suited to apply the laws of the state in which it resides" (Docket Entry No. 29, at 7), no decision on this issue has ever been made either by the District of South Carolina or the District Court here.   This is likely so because SCMC did not move to dismiss the breach of contract accompanied by fraud claim asserted by PSI against it, but, instead, answered PSI's Complaint, raising only by way of an affirmative defense that "Plaintiff fails to state a cause of action on which relief can be granted." (Docket Entry No. 6, ¶ 37).

[3]  The Court further notes that no decision has yet been made regarding the viability of PSI's breach of contract accompanied by fraud claim.   Again, SCMC did not move to dismiss this claim when PSI originally asserted same against it.   In its opposition to PSI's motion to amend, SCMC baldly states, "[p]ut simply, the cause of action for breach of contract accompanied by fraud is not a valid cause of action under New Jersey Law."   [Docket Entry No. 55, at 9]. SCMC does not support this statement with any legal citations.   SCMC's conclusory statement does not convince the Court that PSI's proposed breach of contract accompanied by fraud claim against Seneca Holdings would be futile even if New Jersey law was applied.

11

*Swider v. Ha-Lo Indus.,* 134 F.Supp. 2d 607, 619 (D.N.J. 2001) (citing *Peck v. Imedia Inc.,* 293 N.J. Super. 151, 165 (App. Div.1996)); see also *White v. Roche Biomedical Labs.*, Inc., 807 F. Supp. 1212, 1217 (D.S.C. 1992), *aff'd*, 998 F.2d 1011 (4th Cir. 1993).   However, as SCMC aptly states, promissory estoppel is a quasi-contractual remedy in nature and intended to be a replacement for a contract between the parties when they are unable to reach mutual agreement. An action for promissory estoppel, "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." *Jones v. Marin,* No. 07-0738, 2009 WL 2595619, *6 (D.N.J. Aug. 20, 2009, *citing St. Matthew's Baptist Church v. Wachovia Bank Nat'l Assoc,.* Bi, 04-4540, 2005 WL 1199045, *7 (D.N.J. Mary 18, 2001).   Under both New Jersey and South Carolina law, a quasi-contractual remedy like promissory estoppel "will not be imposed . . . if an express contract exists concerning the identical subject matter."   *Suburban Transfer Service, Inc. v. Beech Holdings, Inc.,* 716 F.2d 220, 226–27 (3d Cir.1983); *Freedom Waste Sols., Inc. v. Family Dollar*, No. 15-4756, 2015 U.S. Dist. LEXIS 139630, at *10 (D.N.J. Oct. 14, 2015); s*ee also Glover v. Lockheed Corp*., 772 F.Supp. 898, 907 (D.S.C.1991) ("[p]romissory estoppel comes into play in situations where actual consideration is not present," and is "inapplicable in situations where a contract exists since a necessary element of a valid contract is consideration.)

Thus it is clear that under both New Jersey and South Carolina law, promissory estoppel is not designed to address cases where an enforceable contract exists.   Here PSI admits that it and "SCMC entered into a contract with a definite term of three years and a monthly minimum of $65,000."   [Docket Entry No. 58, at 6; *see also* Docket Entry No. 53-2, ¶ 8; Docket Entry No. 1, ¶¶ 4-8].   As such, there is no dispute that there exists an express agreement between the parties. As this express agreement exists, it precludes the quasi-contractual remedy of promissory estoppel.

Therefore, the Court finds PSI's proposed cause of action against Seneca Holdings for promissory estoppel to be futile.

### iv.  PSI's Fourth Proposed Cause of Action is not Futile

The Court finds that PSI's proposed fourth cause of action against Seneca Holdings for veil piercing is not futile.   Under both New Jersey and South Carolina law an identical test is used to determine whether a court may pierce the corporate veil.   Given that the tests are the same, the Court focuses only on New Jersey law, recognizing that the result would be the same if South Carolina law was also applied.   Under New Jersey law, a court may pierce the corporate veil only if two elements are present: (1) that a parent corporation dominated its subsidiary to the extent that the subsidiary "had no separate existence but was merely a conduit for the parent" and (2) that the parent corporation "abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."   *State, Dep't of Envtl. Prot. v. Ventron Corp.,* 94 N.J. 473, 499 (1983); *Verni ex rel. Burstein v. Harry M. Stevens, Inc*., 387 N.J.Super. 160, 198 (App.Div.2006); compare with*, Univ. Med. Associates of Med. Univ. of S.C. v. UnumProvident Corp.*, 335 F. Supp. 2d 702, 707 (D.S.C. 2004) (setting forth identical two-pronged "*Sturkie"* test).

To ascertain whether the first element is satisfied, courts within the Third Circuit consider a variety of factors, including "(1) gross undercapitalization (2) failure to observe corporate formalities (3) nonpayment of dividends, (4) insolvency of the debtor corporation at the time, (5) siphoning of funds of the corporation by the dominant stockholder, (6) non-function of other officers or directors, (7) absence of corporate records, (8) and the fact that the corporation is merely a facade for the operations of the dominant stockholder." *Mall at IV Group Props., LLC v. Roberts,* No. 02–4692(WHW), 2005 U.S. Dist. LEXIS 31860, at *9 (D.N.J.2005*); Craig v. Lake Asbestos*

*of Quebec, Ltd*., 843 F.2d 145, 150 (3d Cir.1988).

To determine whether the second element is present, courts within the Third Circuit inquire as to whether the parent corporation "via the corporate form, perpetrated 'a fraud, injustice, or the like.' " *Pappas*, 646 F.Supp.2d at 679 (citing *Group Props*., 2005 U.S. Dist. LEXIS 31860, at \*9), 2005 WL 3338369; *Portfolio,* 334 F.Supp.2d at 626 ("In the Third Circuit, courts have held veil-piercing to be appropriate when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime, or when the parent so dominated the subsidiary that [the subsidiary] had no separate existence").

SCMC argues that the veil piercing claim fails because PSI cannot show the dominance and fraud elements, as required by the first and second prongs of the applicable test.   SCMC maintains that PSI broadly claims that SCMC was undercapitalized and that Seneca Holdings failed to observe corporate formalities in its operations as the basis for its claim.   SCMC also asserts that PSI merely claims that an officer of a parent company may have a role with the subsidiary company and that SCMC failed to meet its contractual obligations.   [Docket Entry No. 55, at 14–15].

This Court, however, disagrees with SCMC's assessment. PSI alleges SCMC was capitalized only to the extent necessary to maintain short-term operations and used the financial strength of Seneca Holdings as an inducement when pursuing business in the State of New Jersey. [Docket Entry No. 53-2, ¶¶ 14–15, 37].   It thus explicitly invoked at least two of the piercing factors.   PSI also alleges that Seneca Holdings managed SCMC's day-to-day operations and directed SCMC's leadership.   [*Id.* at ¶¶ 11–12, 38].   According to PSI, because "[SCMC] failed to observe corporate formalities in its operations, [] the ultimate decision making authority for the

14

subsidiary [rested with] its parent company, Seneca Holdings."   [*Id.* at ¶ 13].   PSI argues that these allegations, if proven, support the conclusion that SCMC was merely an underfunded conduit through which Seneca Holdings conducted its business.   The Court agrees and therefore finds that PSI has met the first prong of the veil piercing test.

Further, the Court finds that PSI has also met the second prong of the test because it need not prove fraud in order for its corporate veil piercing cause of action to survive. As the test makes clear, a "[p]laintiff need not prove common law fraud, [] but rather must meet the less rigid standard of 'fraud, injustice, or the like' to make out a claim for corporate veil piercing."   *Group. Props,* 2005 U.S. Dist. LEXIS 31860 at *10; s*ee also, Ventron Corp.*, 94 N.J. at 500 (stating disjunctive second prong); *Kuibyshevnefteorgsynthez v. Model*, No. 93-4919, 1995 U.S. Dist. LEXIS 1896, at *49 (D.N.J. Feb. 6, 1995) (holding common law fraud not needed).   This means that fraud is *sufficient*, but *not necessary*, to fulfill the second prong.   *See, e.g., Dep't of Hous. v. Rucker*, 535 U.S. 125, 131 (2002) (rejecting lower court's interpretation of statute containing 'or' where it "r[an] counter to the basic rules of grammar" and failed to properly account for "[t]he disjunctive 'or'").   PSI alleges SCMC breached its contract with PSI prior to completion of the term and falsely used the RREM as a pre-textual justification for doing so.   [Docket Entry No. 53-2, ¶¶ 9–10, 25–27].   PSI also states it discovered that SCMC was merely an instrumentality used to shield Seneca Holdings from the "fraud, injustice, or the like" of SCMC.   [*Id.*, at ¶ 40].   Taken together, PSI's claims meet the second prong of the test and raise the claim to the level of plausibility.   Having met both prongs, PSI's proposed amendment has stated a claim upon which relief may be granted and is not futile under Rule 15(a)(2).

**IV. Conclusions**

For the reasons stated above and for good cause shown:

      IT IS on this 20th day of May, 2016

1.      ORDERED that PSI's motion to amend to add Seneca Holdings is GRANTED IN PART and DENIED IN PART; and it is further

2.      ORDERED that PSI shall file an Amended Complaint that complies with the decisions rendered herein within 10 days of the date of this Order; and it is further

3.      ORDERED that the Clerk of the Court shall terminate the aforementioned motion [Docket Entry No. 53].


                       /s/ Tonianne J. Bongiovanni
                     **HONORABLE TONIANNE J. BONGIOVANNI**
                     **UNITED STATES MAGISTRATE JUDGE**