UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PRIVATE SOLUTIONS INC.,** | Civil Action No. 15-3241 (AET) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| **SCMC, LLC,** | |
| Defendant. | |

**BONGIOVANNI, Magistrate Judge**

### I. Introduction

Before the Court are two motions. First is Plaintiff Private Solution Inc.'s ("PSI"), Motion for Sanctions for Failure to Comply with Rule 30(b)(6) of the Federal Rules of Civil Procedure ("motion for sanctions"). [Docket Entry No. 43]. Through this motion, PSI asks the Court to strike the Defendant SCMC, LLC's ("SCMC") Answer and Counterclaims, and order SCMC to pay the costs and fees associated with this motion and the Rule 30(b)(6) deposition of SCMC's corporate representative, Mark Jackson ("Jackson"). [*Id*.]. SCMC opposes the motion. [Docket Entry No. 45].[1]  Second, is PSI's Motion to Strike. [Docket Entry No. 47]. Through same, PSI asks the Court to strike SCMC's untimely opposition brief to PSI's motion for sanctions. SCMC likewise opposes this motion. [Docket Entry No. 48]. The Court fully reviewed and considered all arguments for and against both motions, and considered the motions without oral

---

[1] Both parties' moving papers mention SCMC's allegedly bad faith participation in a September 28, 2015 mediation before the Honorable Louis F. Locasio N.J.S.C.J. (*ret'd*), as ordered by this Court on July 21, 2015. The Court will not consider any argument related to the mediation. This Court's January 22, 2016 Order [Docket Entry No. 51] has referred PSI's separate motion for sanctions concerning the mediation [Docket Entry No. 44] to the Honorable Mark Falk, U.S.M.J. as required by Local Civil Rule ("L.Civ.R.") 301.1.

argument pursuant to L.Civ.R. 78.1.(b).   For the reasons set forth below, both PSI's motion for sanctions and motion to strike are DENIED.

## II. Background

On or around October 29, 2012, Hurricane Sandy struck the coast of New Jersey, damaging or destroying almost 350,000 homes and causing approximately $30 billion in economic losses to businesses and residential properties.   [Docket Entry No. 45, at 1].[2]   In response, the State of New Jersey's Department of Community Affairs launched the New Jersey Reconstruction, Rehabilitation, Elevation, and Mitigation Program ("RREM Program").   [Docket Entry No. 43-1, at 2].   The RREM Program was intended to remediate the hurricane damage by providing eligible homeowners with $150,000.00 in grant funding to repair their primary residences.   [*Id.*].   The RREM Program provided three home repair and/or rebuilding options to homeowners, called "Pathways."   [*Id.*].   The third pathway, "Pathway C," allowed eligible homeowners to have their primary residences repaired or rebuilt by a limited pool of state-approved general contractors.   [*Id.*].   SCMC was one of these state-approved general contractors authorized to perform repair work pursuant to "Pathway C."   [*Id.*].   Following its approval, SCMC entered into a teaming agreement with two other entities, Smart Jack, LLC and Espinosa Group, to obtain "Pathway C" housing assignments, and perform the repair work as approved by the RREM Program.   [*Id.*].   Upon securing the housing assignments, SCMC searched for security companies to provide both surveillance and "fraud protection" services related to SCMC's housing assignments.   [*Id.*].   SCMC's President at the time, Steve Martin, negotiated with PSI's Chief Executive Officer, Stanley Heath Davis, ultimately signing a three-year contract for the aforementioned services on

---

[2]  All referenced page numbers will refer to the page numbers of the parties' respective moving papers.

March 4, 2014.  [Docket Entry No. 45, at 2].  Under the contract, SCMC was to pay for PSI's services based upon the number of homes assigned to SCMC under "Pathway C."  [Docket Entry No. 43-1, at 2].  The contract also provided PSI was to receive $5,000.00 per house for its services with a minimum payment due of $65,000.00 per month.  [*Id.*].  Both parties performed under the contract until SCMC notified PSI the contract was terminated on August 22, 2014, stating the contract was terminated because SCMC had lost its status as an approved contractor under the "Pathway C" program as of July 1, 2014.  [*Id.*].

Not long thereafter, on October 3, 2014, PSI filed this lawsuit in the District Court for the District of South Carolina, and alleged against SCMC three causes of action: (1) breach of contract, (2) breach of contract accompanied by fraud, and (3) promissory estoppel.  [Docket Entry No. 1]. SCMC moved to transfer the matter to the District of New Jersey on January 19, 2015 and its motion was granted by Order of the Honorable G. Ross Anderson, U.S.D.J. (*ret'd*) on May 8, 2015.  [Docket Entry No. 31].  While the motion to transfer was pending, the parties continued to conduct discovery by exchanging interrogatories and documents; and on January 23, 2015 PSI served on SCMC the Rule 30(b)(6) deposition notice serving the basis of PSI's instant Motion for Sanctions.  [Docket Entry No. 43-3].  The notice sought to depose SCMC's designated corporate witness on March 25, 2015; which date was later changed at SCMC's request to April 30, 2015, via an amended deposition notice dated April 23, 2015.  [*See*, Docket Entry No(s). 43-3 and 43-4].  Both deposition notices sought to depose SCMC's corporate designee about a total of 28 topics.  [Docket Entry No. 43-4].  The 28 deposition topics remained the same between both deposition notices.  Similarly, the topics, while too numerous to name, are grouped into five categories: (1) Topics 1, 2, 3, 5, and 7 concerned SCMC's corporate organization and its relationship to any related entities; (2) Topics 4, 6, and 8 concerned SCMS's profits and assets

3

generally, and as related to the RREM Project; (3) Topics 9, 12, 13, 15, and 16 concerned any actions SCMC took to enter the RREM Program; (4) Topics 10, 11, and 14 concerned SCMC's "pathway C" work and; (5) Topics 17-28 concerned the contract between SCMC and PSI.  [*Id.*].

Upon receiving the notice, both parties began a dialogue about which individuals would serve as the respective parties' 30(b)(6) corporate witnesses.  [Docket Entry No. 45, at 4]. SCMC's most knowledgeable witness about the topics enumerated in the deposition notice was identified by SCMC as Steve Martin ("Martin").  [*Id.*].  Martin was not only the President of SCMC, but he was also the individual who had actually negotiated the contract with PSI.  [*Id.*]. However, prior to the deposition, SCMC notified PSI that Martin was unavailable to SCMC. [*Id.*].  Martin had left SCMC on or around January 31, 2015, and has been hostile and uncooperative towards SCMC.  [*Id.*, at 3].  SCMC suggested that PSI could subpoena Martin's testimony without SCMC's objection.  [*Id.*].  However, to date PSI has chosen not to subpoena Martin. Given the unavailability of Martin, SCMC selected Mark Jackson ("Jackson"), one of the general managers for SCMC's "Pathway C" work, as SCMC's 30(b)(6) corporate witness.  [*Id.*, at 4].  SCMC and its counsel prepared Jackson via conference calls, explaining the steps he would need to take to prepare for the deposition.  [*Id.*].

Jackson's deposition began at 12:50 p.m. on April 30, 2016, and ended the same day at 3:48 p.m., producing 123 pages of testimony.  [Docket Entry No. 43-5].  Jackson's testimony establishes Martin hired Jackson to serve as the fourth general manager for SCMC's sandy construction office between April of 2014, and February of 2015.  [*Id*; *Transcript of Jackson Deposition,* at 9:1-16; 12:2-9; 15:16 – 16:7].  Jackson also testified at the time of the deposition, he was not employed by SCMC, but was retained by SCMC as an independent contractor to serve as SCMC's corporate witness for the deposition.  [*Id.*].  At the conclusion of Jackson's

4

deposition, PSI indicated that it intended to move for sanctions based on Jackson being unprepared for the Rule 30(b)(6) deposition.  [*Id*.].  PSI's position was that Jackson's inability to answer questions related to the topics noticed equated to SCMC being constructively not present for the corporate deposition.  [*Tr*., at 125:8 – 127:9].

Following the deposition, both parties' counsel had discussions and letter communications related to the preparation deficiencies PSI raised regarding Jackson's deposition.[3]  [Docket Entry No. 45, at 8].  PSI first outlined the gravamen of the instant dispute in their letter to SCMC on May 12, 2015.  [Docket Entry No. 45-1].  Following this letter, the parties continued to discuss the matter via several conference calls.  [Docket Entry No. 45, at 5].  During these conference calls, SCMC reiterated its offer to produce additional 30(b)(6) witnesses, given Martin's refusal to cooperate.  [*Id.*].  SCMC memorialized their position about Jackson's testimony in their June 12, 2015 letter response to PSI's May 12, 2015 letter.  [Docket Entry No. 45-2].  Any offers to resolve the issue were rejected by PSI in their June 18, 2015 reply to SCMC's letter.  [Docket Entry No. 45-3].

Nevertheless, PSI did not immediately file its motion for sanctions.  Instead, on June 24, 2015 after the matter was transferred to the District of New Jersey, this Court conducted an Initial Conference.  [Docket Entry No. 32].  At same, the Court discussed the possible mediation of this matter.  At no time during the Initial Conference did PSI indicate that it intended to move for sanctions based on Jackson's deposition.  During the Initial Conference, the parties indicated that they were amenable to mediation.  As a result, on July 21, 2015, the Court referred this matter to the Hon. Louis F. Locasio, N.J.S.C.J. (*ret'd*) for mediation, staying same for 90 days.  [Docket

---

[3] The parties' arguments in their letters are identical to the instant briefing; therefore, the Court does not address the substance of the letters.

5

Entry No. 41]. It was not until after the parties attended a mediation session with Judge Locasio on September 28, 2015, a mediation session that PSI claims SCMC failed to adequately participate in based on the failure of SCMC's principal to appear in person [*see* Docket Entry No. 44], that PSI filed the instant motion for sanctions. PSI filed same without informing the Court of its intention to do so.

### III. The Parties' Arguments

In its motion for sanctions, PSI's argues SCMC was constructively absent at SCMC's 30(b)(6) deposition because Jackson, its designated corporate witness, was only able to testify about topics within his *personal knowledge*, and therefore was not adequately prepared to testify about topics "known or reasonably available *to the organization*," as is required of a 30(b)(6) corporate witness. [Docket Entry No. 43-1, at 13]. PSI argues Jackson's general lack of preparation is plainly evident from his deposition testimony. For example, Jackson testified:

| | | |
|---|---|---|
| Mr. Kenney: | | Okay. Did you do anything to prepare for the deposition today? |
| Mr. Jackson: | | No. I did see this (indicating), and it was made very clear that I was to come here and tell the truth and the truth doesn't require memory, because the truth is the truth. So – and what I know is from memory from working up there for basically nine months. |
| Mr. Kenney: | | Okay. |
| Mr. Jackson: | | So on some of the things in here [the deposition notice] I know about, and some of the things I don't. |

[*Id.,* at 4; see also, *Tr*., at 11:18 – 12:13].

Additionally, PSI cites Jackson's affirmative inability to answer deposition topics: 1, 2, 4, 5, 6, 7, 8, 17, 18, 19, 20, 23, 25, 27, 28. [*Id*., at 5-11]. When specifically asked about these topics, Jackson states, in some fashion, that he does not know the answer to the question. [*Id*.]. For example, regarding deposition topic #1, SCMC's relationship to Seneca Holdings, LLC, the

6

following exchange was had:

> Mr. Kenney: On behalf of the company, do you have any information about SCMC's relationship to the holding company?
>
> Mr. Jackson: Other than it was [SCMC's] immediate superior in the chain of command, none.

[*Id.*, at 5; see also, 25:2-6].

Similarly, when asked about deposition topic #20, the identity of all individuals involved in the decision to repudiate, breach, or terminate the Contract with Private Solutions, Jackson testified:

> Mr. Kenney: How about, do you know who made the decision to tell Private Solutions that the contract was cancelled?
>
> Mr. Jackson: No.
>
> Mr. Kenney: Ok. Did you make that decision?
>
> Mr. Jackson: No.

[*Id.*, at 8; see also, 115:1-6].

Given Jackson's inability to answer questions like these, PSI argues that SCMC was constructively absent from its Rule 30(b)(6) deposition. [*Id.*, at 15]. PSI further argues that due to SCMC's failure to provide an adequate Rule 30(b)(6) designee, it has been significantly prejudiced. [*Id.*, at 15, 17]. Consequently, PSI asks that the Court strike SCMC's Answer and Counterclaims, and also require SCMC to pay the costs and fees incurred by PSI both in filing its motion for sanctions and in attending Jackson's deposition.

In contrast, SCMC argues that no sanctions are warranted. In this regard, SCMC raises five arguments in opposition to PSI's motion for sanctions. First, SCMC argues that the Court should deny PSI's motion because it violates L.Civ.R. 301.1(e)(6) as it was filed during the 90-

day stay imposed by this Court's July 21, 2015 Mediation Order. [*See* Docket Entry No. 45, at 9]. Second, SCMC claims that the motion should be denied because PSI neither raised the issues contained in its motion for sanctions informally first with the Court prior to filing the formal motion, nor did PSI attach an affidavit in support of its motion for sanctions in contravention of Rule 37 and L.Civ.R. 37.1. [*Id.*, at 9-12].[4] Third, SCMC argues that in no way does its conduct during the mediation of this matter or PSI's separate request for sanctions based on same support PSI's current motion for sanctions. In this regard, SCMC contends that its actions regarding the mediation, including the telephonic appearance of its client, were approved by the appointed mediator, Hon. Louis F. Locasio, prior to the September 28, 2015 mediation, and the only party that failed to act in accordance with the mediator was PSI. [*Id.*, at 12-13].[5] Fourth, SCMC argues that it complied with its obligations under Rule 30(b)(6). In this regard, SCMC, notes that after being served with PSI's Rule 30(b)(6) deposition notices, it informed PSI that Steve Martin, the former President of SCMC, would be the best person to testify on the noticed topics, that Martin not only no longer worked for SCMC, but was hostile towards it, and therefore not in SCMC's control so SCMC could not make him available to testify, and that SCMC would not object to PSI subpoenaing Martin. [*Id.*, at 3-4]. Further,

---

[4] The Court notes that neither party appears to appreciate the necessity of complying with their procedural obligations. SCMC filed its opposition to PSI's motion for sanctions 7 days late and PSI filed said motion during the mediation stay and without first raising the issue informally with the Court. Despite these procedural missteps, the Court shall exercise its discretion to address both the substance of PSI's motion for sanctions and SCMC's opposition thereto. PSI's motion to strike SCMC's opposition to PSI's motion for sanctions is therefore DENIED.

[5] SCMC's conduct during the mediation of this matter and PSI's motions for sanctions related to same has been referred to the Hon. Mark Falk, U.S.M.J. [Docket Entry 44]. The arguments raised by PSI and SCMC regarding same have no impact on the Court's decision herein.

8

given Martin's departure from SCMC, SCMC notes that it gave PSI "prior notification . . . of the need for more than one 30(b)(6) witness." [*Id.*, at 14]. SCMC then made Jackson available to testify as its first Rule 30(b)(6) designee, and Jackson gave significant testimony on many of the topics noticed by PSI during his Rule 30(b)(6) deposition. [*Id.*, at 13-14]. Fifth, SCMC argues that even if all of PSI accusations were true, which, again, SCMC steadfastly denies, PSI's request to strike SCMC's Answer and Counterclaims should be denied as the record does not support the imposition of such a harsh sanction. [*Id.*, at 15-20]. Indeed, SCMC claims that no sanctions are warranted.

**Analysis**

Rule 30(b)(6) provides in relevant part:

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . The persons designated must testify about information known or reasonably available *to the organization*.

(Emphasis added). Although the individuals selected to testify need not have personal knowledge, Rule 30(b)(6) imposes an obligation on the entity to prepare the witnesses so that they can answer all noticed topics fully, accurately, and non-evasively. *Sanofi-Aventis v. Sandoz, Inc.,* 272 F.R.D. 391, 393-94 (D.N.J. 2011); see also *Harris v. New Jersey*, 259 F.R.D. 89, 92-93 (D.N.J. 2007) (quoting *Mitsui & Co. v. P.R. Water Res. Auth*., 93 F.R.D. 62, 67 (D.P.R.1981)). This affirmative duty extends only to information "known or reasonably available to the organization." Fed.R.Civ.P. 30(b)(6); *8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure* § 2103, at 457 (3d ed.2010). Determining if certain information is

"known or reasonably available" to an entity requires a fact-specific analysis. See *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D.Md.2010).

Preparation is an inherent part of a Rule 30(b)(6) deposition. This is because the 30(b)(6) deposition is intended to "more efficiently produce the most appropriate party for questioning, curbs the elusive behavior of corporate agents […that] suggest someone else has the requested knowledge, and reduces the number of depositions for which an organization's counsel must prepare agents and employees." *Harris*, 259 F.R.D. at 92. Thus, in reviewing the sufficiency of the testimony of a Rule 30(b)(6) deponent, the Court examines both the substance of the testimony and the preparation undertaken by the witness. *Reichhold, Inc. v. U.S. Metals Ref. Co.*, No. CIV 03-453 DRD, 2007 WL 1428559, at *6 (D.N.J. May 10, 2007) (Court found proper a Magistrate Judge's ruling that a 30(b)(6) deponent was prepared when the Court examined both the witness's actual deposition preparation and testimony). If the designated deponent was not prepared, the lack of adequate preparation can be equated to the organization at issue being treated as if it failed to produce a deponent at all. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000).

To determine whether Jackson's testimony was sufficient, the Court reviews the content of Jackson's deposition testimony and does so with an understanding of certain circumstances unique to this case. Specifically, the Court remains mindful of the fact that at the time PSI took Jackson's deposition, PSI was well aware that the person best able to testify about the topics it noticed was Martin, the former President of SCMC, who is now hostile to the company and unavailable as a corporate designee. The Court notes that despite being able to do so, and perhaps even being encouraged to do so by SCMC, PSI did not subpoena Martin prior to deposing Jackson, nor has PSI done so since. While the Court appreciates PSI's desire to obtain Rule 30(b)(6) deposition

testimony attributable to SCMC itself, which Martin can no longer provide, PSI's decision to not pursue Martin and the knowledge he alone may singularly retain rests solely with PSI. Further, the Court notes that SCMC provided "prior notification to [PSI] of the need for more than one 30(b)(6) witness to answer all questions given Mr. Martin's departure[.]" [Docket Entry No. 54, at 14].

It is clear from Jackson's testimony that Jackson demonstrated that he had significant knowledge about the daily flavor of SCMC's RREM worksites. In his role as the fourth general manager of SCMC, Jackson was required to participate in any number of day-to-day activities including but not limited to: (1) corresponding with SCMC's then President, Steve Martin; (2) serving as SCMC's general liaison for the PSI security staff; (3) retaining and training local office staff; (4) creating and maintaining records relating to housing assignments; and (5) other associated tasks. [*Tr.*, *passim*]. This knowledge allowed Jackson to provide affirmative testimony about at least twenty (20) of the deposition topics noticed by PSI: 1-3, 7-16, 21-27.

While Jackson was not able to provide information on all of PSI's noticed topics and while there were questions he was unable to answer even on the topics he testified about, the Court is not persuaded that Jackson's testimony was so limited as to render SCMC constructively not present at the Rule 30(b)(6) deposition. Indeed, Rule 30(b)(6) does not require perfection and Jackson provided over 123 pages of usable testimony on several of the noticed topics. *See Costa v. County of Burlington*, 254 F.R.D. 187, (D.N.J. 2008) (declining to impose sanctions and holding that "[s]imply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness") (citing *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 137 (D.D.C. 1998) (declining to impose sanctions where designee was inadequate witness in certain respects and finding Rule

11

30(b)(6) deponents must be prepared and knowledgeable "but they need not be subjected to a 'memory contest.'")).

Further, despite PSI's claims to the contrary and certain testimony by Jackson that would suggest otherwise, Jackson did prepare for his deposition. Not only did SCMC and its counsel conduct conference calls with Jackson to discuss PSI's claims in this matter and the steps Jackson would need to take to prepare for the Rule 30(b)(6) deposition, but SCMC and counsel also provided him with "any and all materials . . . needed to be able to speak to as many topics as possible." [Docket Entry No. 45, at 14].

Under these circumstances, the Court finds that Jackson testified adequately in his role as one of SCMC's Rule 30(b)(6) designees. Jackson was able to testify about enough topics during his deposition to meet the standard of preparedness required by the Rule and sanctions are therefore unwarranted. As SCMC has already offered, the Court shall require it to produce an additional Rule 30(b)(6) witness. The Court understands that Jessica Ventura ("Ventura"), Mr. Martin's secretary, maybe selected. In order to avoid any confusion regarding the scope of her or any other designee's testimony, the Court instructs SCMC to identify the topics on which Ventura or any other future designee will testify. Given the realities of this case and the fact that Martin likely possesses the most relevant information and maybe the "sole" person knowledgeable about "many of the factual details related to the dispute[,]" the Court strongly encourages PSI to pursue his deposition and to do so prior to deposing any additional Rule 30(b)(6) witnesses. [Docket Entry No. 45, at 4].

### IV. Conclusions

For the reasons stated above and for good cause shown:

IT IS on this 20th day of May, 2016

1. ORDERED that PSI's Motion for Sanctions is DENIED; and it is further

2. ORDERED that PSI's Motion to Strike is DENIED; and it is further

3. ORDERED that the Clerk of the Court shall terminate the aforementioned motions [Docket Entry Nos. 43 & 47] accordingly.

      /s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**